**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MARK PURVIS, | |
| Plaintiff, | |
| v. | Civil Action No. 03-0275 (RBW) |
| DISTRICT OF COLUMBIA, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**

Plaintiff, proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983 (2000),

seeking damages related to his alleged exposure to second-hand tobacco smoke while confined at

the District of Columbia Department of Corrections Central Detention Facility ("D.C. Jail").  The

parties have filed cross-motions for summary judgment.[1]  Having considered the motions, the

oppositions thereto, and the entire record in this case, the Court will grant summary judgment for

defendants.

## I.  BACKGROUND

From August 2002 to March  2003, plaintiff, a non-smoker, was incarcerated at the D.C.

---

[1]      It appears that plaintiff's "Motion for Summary Judgment against District of
Columbia, et al.," stamped "received" on June 3, 2005, was sent directly to chambers rather than
to the Clerk's Office for filing.  For this reason, evidently, the motion does not appear on the
docket.  The District of Columbia filed an opposition to the motion [Dkt. #53] on June 17, 2005.
The Court will direct that plaintiff's motion (with accompanying exhibits and certificate of
service) be placed on the docket.  The motion will be denied, however, for reasons set forth in
this Memorandum Opinion.

Jail.[2]  *See* Complaint ("Compl.") at 6; Plaintiff's Reply [Opposition] to Motion for Summary

Judgment of Defendant Stanley Harper, M.D. ("Pl.'s Opp."); Plaintiff's Statement of Material

Undisputed Facts ¶ 5.  During this period of incarceration, he allegedly was exposed to high

levels of environmental tobacco smoke.  *See* Compl. at 5-6 (page numbers designated by the

Court).[3]  Plaintiff also alleges that he was exposed to smoke from toilet paper and toilet paper

wrappers, which inmates burned both to light cigarettes and to heat water.  *Id.* at 6.  This

exposure to smoke allegedly has caused plaintiff to suffer headaches, elevated blood pressure,

and dry, aching and burning eyes.  *Id.* at 6, 7.

Plaintiff alleges that "[a] paper trail of letters, requests, and inquiries [were] forwarded to

the officials and administration of the Central Detention Center," including the Medical

Department.  *Id.* at 6.  However, plaintiff contends that the only treatment he received for his

medical problems was a ten-day supply of eye drop medication.  *Id.* at 7.  According to plaintiff,

he should have received additional treatment, including regular blood pressure checks and mental

health treatment for the "stress resulting from being in a complete environment of smoke."  *Id.*

Thus, plaintiff claims that defendants have violated his rights under the Eighth Amendment to

the United States Constitution, and he demands damages in the amount of $12.5 million for the

resulting injuries he allegedly has sustained.  *Id.* at 5.

---

[2]  Some time after the filing of the complaint, plaintiff was transferred to the federal correctional institution in Lewisburg, Pennsylvania.  He has now been released and currently resides in the District of Columbia.

[3]  Plaintiff submitted his complaint on a five-page preprinted form to which he attached a two-page document entitled "Circumstances and Facts."  The Court designates the "Circumstances and Facts" as pages 6-7 of the Complaint.

## II.   DISCUSSION

### A.  Summary Judgment Standard of Review

A motion for summary judgment will be granted if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with affidavits, show that there is no genuine

issue of material fact in dispute, and that the moving party is entitled to judgment as a matter of

law.  Fed. R. Civ. P. 56(c).  The moving party bears the burden of demonstrating the absence of

any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Factual

assertions in the moving party's affidavits may be accepted as true, unless the opposing party

submits his own affidavits or documentary evidence that contradict the movant's assertions.

*Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992); Local Civil Rule 7(h).

### B. Defendant District of Columbia[4]

The District of Columbia contends that plaintiff cannot establish that he was exposed to

unreasonably high levels of second-hand smoke in violation of the Eighth Amendment.  To

establish a claim based on exposure to environmental tobacco smoke ("ETS"), plaintiff must

demonstrate that, "with deliberate indifference, defendant exposed him to levels of ETS that

pose[d] an unreasonable risk of serious damage to his future health."  *Helling v. McKinney*, 509

U.S. 25, 35 (1993).  Plaintiff must provide "objective" evidence of the degree of his exposure

and its effect on him and "subjective" evidence of deliberate indifference by prison officials.  *Id.*

---

[4]      Because the complaint appears to name individual defendants, Odie Washington and M.L. Brown, in their official capacities only, this action is deemed a suit against the District of Columbia, as both are government officials of the city. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 690 n.55 (1978).

at 35-37. "Anecdotal accounts" of smoking at the jail are insufficient.  *Scott v. District of Columbia*, 139 F.3d 940, 942 (D.C. Cir.), *cert. denied*, 525 U.S. 851 (1998).  Rather, to prevail, plaintiff must provide some kind of "scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that . . . injury to [his] health [was] actually caused by exposure [to ETS].'"  *Id.* (quoting *Helling*, 509 U.S. at 36).  Assuming that plaintiff could provide such evidence, the Court must assess whether society considers the risk of exposure to ETA to be "so grave that it violate[d] contemporary standards of decency to expose *anyone* unwillingly to such a risk."  *Id.*   Morever, plaintiff must prove that prison officials "'knowingly and unreasonably disregard[ed] an objectively intolerant risk of harm.'"  *Scott*, 139 F.3d at 943 (quoting *Farmer v. Brennan*, 511 U.S. 825, 846 (1994)).

In support of his Eighth Amendment claim, plaintiff relies in large part on his complaint, in which he alleges that his constant exposure to "secondary cigarette smoke . . . seriously threatens his future health."  Compl. at 5.  He also refers to reports and scientific studies pertaining to the health consequences of exposure to second-hand smoke, particularly with regard to eye irritation and blink rate.  *See* Plaintiff's Motion for Summary Judgment Against Defendant District of Columbia, *et al.* at 18-21 ("Scientific and Statistical Report on the Health Consequences of Involuntary Smoking and its Effects on the Eyes; Submitted by the Plaintiff"). In addition, he refers to a report of the United States Surgeon General, provides printouts from various websites on dry eye problems, and submits a copy of an article on treatment for dry eye. *See id.*, Exhibit ("Ex.") ("Additional Expert Reports/Medical Reports").

Plaintiff's allegations are conclusory, self-serving, and the type of anecdotal evidence rejected in *Scott*.  *See Scott*, 139 F.3d at 942.  Moreover, the scientific evidence he has submitted

is of no assistance to his Eighth Amendment claim.  Plaintiff's evidence is deficient because it fails to establish that plaintiff personally was exposed to ETS, suffered health consequences as a result of the exposure, and that his exposure to unreasonably high levels of ETS occurred at the D.C. Jail.  The law requires that plaintiff demonstrate a causal relationship between his alleged health conditions and an increased harm to him from second-hand  smoke.  *Id.* at 943.  Plaintiff also must show that he personally  was exposed to unreasonably high levels of ETS.  *Helling*, 509 U.S. at 35.  General scientific studies regarding the effects of ETS are not sufficient to satisfy plaintiff's burden of establishing an Eighth Amendment violation.  Without a showing of an "objectively intolerable risk," plaintiff cannot show defendant's "knowing and unreasonable disregard of it."  *Scott*, 139 F.3d at 944.

Even if plaintiff had met his burden on the objective prong of the analysis, he has failed to establish defendant's deliberate indifference.  Although he faults defendant for not imposing restrictions on smoking at the D.C. Jail, *see* Compl. at 6-7, a non-smoking policy was in effect at the time of plaintiff's incarceration.  *See* Memorandum of Points and Authorities in Support of the District of Columbia's Motion for Summary Judgment, Ex. A (District of Columbia Department of Corrections Smoke Free Workplace Policy, effective May 1, 1992).  The adoption of "such a policy militates against a finding of deliberate indifference."  *Scott*, 139 F.3d at 944; *Helling*, 509 U.S. at 36-37.  Moreover, imperfect enforcement of a non-smoking policy shows at worst negligence, not deliberate indifference.  *See Scott*, 139 F.3d at 944.  Deliberate indifference is a culpable state of mind beyond negligence.  *See Farmer,* 511 U.S. at 835.

Because plaintiff has satisfied neither the objective nor subjective prong of the analysis, the District of Columbia's motion for summary judgment will be granted, and plaintiff's motion

will be denied.[5]

## C.  Defendant Stanley Harper

Defendant Harper is the former Medical Director for the Center for Correctional Health &

Policy Studies, Inc., a private corporation which provided medical care for D.C. Jail inmates

under a contract with the District of Columbia.  *See* Answer of Defendant Stanley Harper, M.D.

(Fifth Defense).  He moves for summary judgment on the ground that plaintiff has failed to show

that he was deliberately indifferent to plaintiff's serious medical needs.  Memorandum of Points

and Authorities in Support of Motion for Summary Judgment ("Harper's Mot.") at 7.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the

'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment."  *Estelle v.*

*Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).  Not every instance of inadequate medical

treatment is a violation of the Eighth Amendment.  *Id.* at 105.  Indeed, "a complaint that a

physician has been negligent in diagnosing or treating a medical condition does not state a valid

claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not

become a constitutional violation merely because the victim is a prisoner."  *Id.* at 106.

A successful Eighth Amendment claim for the denial of medical care must satisfy a two-

pronged test.  Plaintiff first must show that the alleged deprivation is sufficiently serious to be

considered cruel and unusual.  *Pryor-El v. Kelly*, 892 F.Supp. 261, 266 (D.D.C. 1995).  A

---

[5]       The District of Columbia filed its summary judgment motion [Dkt. #44] on April
26, 2005.  Although the Court advised plaintiff of his obligation to file an opposition to the
motion and of the consequences of his failure to file a response [Dkt. #46], his opposition does
not appear on the docket.  However, evidently plaintiff served an opposition on counsel for the
District of Columbia.  Its reply [Dkt. #49] to that opposition was filed on May 23, 2005, and
plaintiff's surreply [Dkt. #52] was filed on June 13, 2005.

medical need is considered serious if it either is "diagnosed by a physician as mandating

treatment" or is "so obvious that even a lay person would easily recognize the necessity for a

doctor's attention." *Cox v. District of Columbia*, 834 F. Supp. 439, 441 (D.D.C. 1992).  Second,

plaintiff must show that he was deprived of humane conditions because Harper knowingly

disregarded "an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.  A

defendant "must both be aware of [the] facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference." *Id.*

To support his claim against Dr. Harper, plaintiff relies on his allegations that he suffered

from irritated, dry and burning eyes and other symptoms, which he attributes to exposure to

environmental tobacco smoke at the D.C. Jail and the medical treatment (or lack of treatment) he

received. *See* Compl. at 6. ; Plaintiff's Affidavit [#12] at 2; Harper's Mot., Ex. 1 (Medical

Records) at 38-39, 42, 44, 57, 59, 64, 66, 70, 72-74, 76-77; Plaintiff's Motion for Summary

Judgment Against Defendant Stanley Harper, M.D., Exs. B-F.  In addition, plaintiff has produced

a copy of his correspondence to the "Director of Medical Department" regarding "the medical

problems [he was] having as a result of the total smoking environment of the D.C. Jail."  Pl.'s

Opp., Ex. A (September 26 and October 3, 2002 letters from plaintiff to Director of Medical

Department).  However, the record does not indicate whether defendant Harper received the

letters, and what action, if any, he may have taken upon receipt of plaintiff's correspondence.

In response, defendant Harper's motion represents that he never provided direct medical

care to plaintiff, and that "all of Plaintiff's complaints regarding eye aches or dry eyes, were

attended by health care providers."  Harper's Mot. at 2, 7-9 & Ex. 1 (Medical Records).  The

medical records attached to defendant Harper's motion, the authenticity of which plaintiff does

not challenge, support Harper's position.  The records indicate that plaintiff was seen by medical

staff at the D.C. Jail on 44 occasions and received treatment for symptoms plaintiff attributes to

his exposure to second-hand smoke.[6]  The fact that plaintiff received extensive medical care

indicates that Harper, as medical director, was not indifferent to plaintiff's needs.  *See Estelle*,

429 U.S. at 107 (finding no Eighth Amendment violation where plaintiff seen by medical

personnel on 17 occasions over three-month period); *Turner-Bey v. Director of Medical Services*

*(CCHP)*, Civ. No. 04-1744, 2005 WL 3544290, at *2 (D.D.C. Dec. 27, 2005) (evidence of

medical treatment by prison officials negates assertion of deliberate indifference).  Plaintiff's

"displeasure as to the quality of medical treatment" does not rise to the level of a constitutional

violation.  *Brown v. District of Columbia*, Civ. No. 04-2195, 2005 WL 3276267, at *3 (D.D.C.

Aug. 2, 2005).

   The undisputed material facts in this case indicate that the medical treatment provided to

plaintiff was not "repugnant to the conscience of mankind," "an unnecessary and wanton

infliction of pain," or an offense to "evolving standards of decency," as is required to establish an

Eighth Amendment violation.  *See Estelle*, 429 U.S. at 105-06.  If anything, the record indicates

the opposite – that plaintiff received appropriate medical care.  For these reasons, defendant

Harper's motion for summary judgment also will be granted.

---

   [6]   Prison medical records are appropriately considered in ruling on a summary
judgment motion.  *Hughes v. Joliet Corr. Ctr.*, 931 F.2d 425, 428 (7th Cir. 1991); *see also*
*Polanco v. Dworzack*, 25 F.Supp.2d 148, 151 (W.D.N.Y. 1998) (Eighth Amendment prison
medical care claim action where court considered medical records in resolving summary
judgment motion).

### III.   CONCLUSION

Based on the foregoing, defendants' motions for summary judgment were granted and

plaintiff's motion was denied.  A separate Order consistent with this Memorandum Opinion was

issued on March 21, 2006.


          /s/

REGGIE B. WALTON
United States District Judge

DATE:   April 6, 2006